I suppose the best place to start is to just take a look at the two reasons the court stated for deciding to dismiss the complaint without leave to amend. First of all, the court decided that all the plaintiff's claims were barred by the applicable statute of limitations and that the discovery rule started to run in 2006 based on the plaintiff's knowledge of the terms of their loan, and I maintain that this was error, because basically the court was applying the discovery rule to plaintiff's knowledge of the terms of their loan rather than the discovery of the fraud that was alleged. And essentially the same can be said of the court's decision about failing to adequately allege injury and causation. The court basically premised its decision there on the same type of facts, in other words knowledge of the loan, the terms of the loan, and the court improperly concluded I would say that it didn't believe that the plaintiffs could have been hurt or damaged because they were aware of the terms of their loan and they paid their interest payments for ten years as responsible citizens. Let me stop you for a second. Another way to phrase what the trial court said was, where is the harm here? Let's say hypothetically your clients were aware of the other appraisal, what do you Well, first of all, I disagree with the court's judgment that the first appraisal was fine. We've alleged that all the appraisals were a ploy. Assume for the moment, get past that point, okay? Okay. What about the second appraisal changed the darn thing here? Well, when they discovered what they had done, it was obvious, plainly obvious, that a serious blatant fraud had been committed on the plaintiffs. In other words, they were qualified for a loan that they clearly didn't qualify for. The property didn't have the equity that they said it had. They put them in a situation that they struggled and kept up with for ten years, but eventually they were overcome by the terms of that particular loan. And I don't, and I think So take, all right, good luck. I was going to say Let's try to make No, go ahead, you Yeah Okay, let's try to make some logical sense of this, okay? The fraud is there was another appraisal that showed the property was allegedly worth $649,000 more than the first appraisal said it was. Tell me how that harms someone. Where is the harm there? I think that's limiting the fraud that I've alleged, number one. I think the fraud is much broader than that. Much broader. I mean, we don't know anything about what their income was, what their payment history I mean, there's a lot that goes into determining whether or not somebody qualifies for a loan on a particular property. We don't have any of that information in front of us. The only thing Well, let me stop you. How does any of that have anything to do with the second appraisal? That was Judge Saltzman's point, wasn't it? Well, the second appraisal is a very strong indication, a very plausible indication that a fraud was being perpetrated on these particular plaintiffs. There's no other reason for it. There's no other conclusion you can draw from that second appraisal, but that it was used to perpetrate a fraud. Counsel, there are a hundred other conclusions you could draw from that. Well, I'm not sure they'd be reasonable. Three, on and on and on and on. I mean, I'm struggling to understand any theory here that articulates a fraud or damage. Which is really what I think Judge Saltzman concluded at the end of the day. Well, let's do a thought experiment. So, assuming that the second appraisal was fraudulent, as the plaintiffs have alleged, and that it was grossly inflated so that they could qualify for the loan they were given, let's assume all that's true, right? By the way, I have no basis to assume any of that's true. No, no, I understand that. But I think because it's been alleged, we're bound to accept it as true. Yeah, we're also bound by 12B and Iqbal, so let's try to make some rational sense of it. Right, right. But I think, so let's assume that the allegations are true. The question then is, how were they harmed by this? Because they took a loan and paid for it? I think whenever there's a fraud like this, there absolutely is harm. And I think to disregard the fact that they were intentionally put into a loan that they probably didn't qualify for, that they couldn't afford. I mean, if you look at all the state and federal statutes that they violated, just by authorizing and putting a phony fraudulent appraisal in the file, and they've admitted using it to determine which loan to give the plaintiffs, that was in their own brief. I don't know how you can say that they absolutely, as a matter of law, were not damaged. I think it's drawing conclusions that are reserved for the jury. Let me try and ask a similar question, maybe in a slightly different way. Your clients applied for a loan because they wanted a loan. They got a loan, which they accepted, presumably because that's the loan they wanted. If they had known about these appraisals, either the first or the second or both, would they have not wanted or not accepted the loan? I don't think they would have. That's what's been alleged. How is that even possible? There are a lot of people that don't want to deal with people who engage in fraud and underhanded tactics. I mean, why do we get to assume that because somebody took a loan that they would necessarily have done the same thing if they had discovered that people were defrauding them or putting them at risk or in jeopardy? I don't think that's fair. Here's what happened. How do you sanction a fraud like this? Counsel, how about if you don't interrupt me? Here's what happened. Your clients have a nice house in Santa Barbara, God love it. They got a loan to refinance a debt, God love it. They got it based at least on one appraisal that we all knew about, which indicated a 35% loan-to-value ratio, which Judge Salzman concluded. And they lived in this house for 10 years, paying nothing more than the cost of the money. Correct? Correct, so far. Are you a bankruptcy lawyer? No, I'm not. Well, why don't you come to my Chapter 13 calendar sometime and propose this as a hypo, and people are going to line up to take this kind of fraud. I don't know how else to say it. Well, in my mind, a fraud is a fraud, and you can't let frauds go unpunished. Okay, gotcha. I mean, you can't. And, you know, Bank of New York Mellon, they settled against two of the defendants in this case for $8.5 billion. I cited the case in my papers. So they knew these loans were full of problems and full of phony appraisals. They collected a lot of money from two of these defendants, and now they're turning around saying, oh, there's nothing wrong with these loans, we didn't do anything wrong. I don't understand it, really, quite frankly. I don't understand it. Counsel? Counsel, can I ask you a question? Sure. Okay, so I just want to clarify that you had a fairly lengthy, extensive complaint that asserted all of the facts that you were relying upon, that the court granted the 12B6 motion. And what you're speaking is for us to determine that there was sufficient facts and evidence and reasonable inferences from those facts and evidence that she should not have granted the 12B6 motion as a matter of law, correct? That's correct. You are not suggesting to us that this was improperly dismissed because you would have amended the complaint to assert different and more facts that you didn't already incur that would have established that the complaint was legitimate. At this point, the issue is we had enough, we shouldn't have done what she did given what we said. There were issues that needed to be required of either a jury or summary judgment, or depositions, or more discovery, right? Well, I would agree that we're saying that, but I would also say that there are additional facts that have come to light since we first filed the complaint that I would clearly add, and there's probably a number of things I would do to tighten a few things up. But other than that, I think, I mean, I strongly believe that there's enough there to adequately satisfy the two lead cases from the U.S. Supreme Court easily. These claims are clearly more than plausible. I've alleged a fraud. There's lots of evidence in other cases around the country where now that have come to light where people have, you know, large settlements have been entered into. And, again, Bank of New York Mellon is one of the beneficiaries of one of those large settlements. So we knew about these problems. I'm going to stop you because you're just a little over four minutes left. If you want to reserve, this would be a good time for you to stop. But if you want to keep going, that's fine, too. Up to you. No, no, I thank you. I appreciate it. Okay. All right. On the Apple East side, who's going to go first, and how are you going to divide up your time? Your Honors, Mr. Hennessy and myself have agreed that I will go first. My name is Tanya Green. I'm here on behalf of the Bank of America Countrywide and Landsafe Defendants. And I will take up ten minutes, and Mr. Shaughnessy will take the remaining five minutes. Very good. Please go ahead. Your Honors, the first issue I'd like to address is the fact that the harm simply does not flow. It cannot flow from a plausible standpoint. It cannot flow from the existence of the phony appraisal. And that was what Judge Saltzman—Judge Saltzman correctly identified the facts that appellants would need to know in order to know if their loan was affordable and whether they qualified for it. And that's based on the appellant's own allegations. They said their harm was that they were burdened with an unaffordable loan that they didn't qualify for. That's paragraph 101 of the complaint. That's ER 28. And the facts that the court identified in the oral decision was— Can I stop you for just one second? We have quite a bit of echoes. I heard that too. If we could ask people to please mute their microphones. Is this better, Your Honor? Much better. Thank you. Go ahead. Thank you. And so the facts that the court identified that would put someone on notice as to whether they can afford their loan are the facts such as the interest rate, the amount of the loan, the payment terms. And the court determined that all of these terms were known by appellants in 2006. And that's never been—the fact that they knew those terms in 2006 has never been disputed. The argument that the court erred simply because Judge Saltzman refused to draw the inference that the second appraisal was the but-for cause of them being placed into the loan is incorrect. And to be clear, there was an inference that needed to be drawn here. There is nothing on the face of an appraisal that would put appellants on notice that they cannot afford their loan. An appraisal—and this is alleged in the complaint—that the appraisal stated the value of the property. That in and of itself— The argument that I—I think we posed a similar question to counsel. And the argument seems to have been, well, we don't think they could have afforded it. But more to the point, had they known about that second appraisal, well, then they would have known they were dealing with fraudsters and they simply wouldn't have made the loan. Do you have any response to that argument? As Judge Saltzman correctly ruled, that just simply is not plausible. There is no—they haven't supported that with anything in the complaint. The appraisal itself is—they just simply haven't alleged that, as we all know with loans, someone—they agree to it. They read the loan. They read the terms. They agree. They sign it for it or they accept it or they don't. And there is nothing about the appraisal itself. If anything, the appraisal is meant to put the lender on notice as to the risk that they're undertaking in giving the loan to appellants. But— Let me ask you that question. I mean, I understand what you're saying is the appraisal is really done for the benefit of the lender. That does not create a duty to the borrower. Correct. Correct. Are there requirements in any federal statutes that appraisal be done in connection with a home loan? You know, Your Honor, I don't want to mistake the law. I don't know the answer to that offhand. There is nothing alleged in the complaint that there is a duty of any sort by the bank to provide an appraisal in this instance. And did you read the complaint the way the counsel for the appellant is telling me today he did, that there's an allegation that the first appraisal also was fraudulent? I did not read the complaint that way. But I think, as Your Honor pointed out earlier, I don't think it matters. In appraisal, accurate or not, first appraisal or second appraisal is not what puts the appellants on notice as to whether their loan is affordable or whether they qualify for it. So to go back to, and I would say that, you know, in their reply brief, they've shifted positions, you know, here and there. But in their reply brief, they pointed to paragraphs 152 and 98 of the complaint as being support for the inference that they wanted the court to draw. But all of those paragraphs said is that the second allegedly phony appraisal was delivered to Countrywide's underwriters. And that misses the mark. The delivery of the appraisal to the underwriters here in no way would permit the court to draw an inference that the appraisal is the but-for cause for appellants being placed into the loan. And from there, it follows that if appellants can't even establish that the appraisal is the but-for cause of their harm, then they also can't establish that not knowing about the appraisal prevented them from knowing they were harmed. And that's what they had to establish in order to make the claim that their arguments were, I'm sorry, in order to establish that their claims were timely. They needed to establish that somehow not knowing about this appraisal delayed their discovery of their claims. And they haven't been able to do that. I'm sorry to interrupt you for a second, but what I'm trying to focus on is the 12B6 motion was granted because the court didn't believe there was cause of the statute of limitations was a mark. The issue for me is the question that I raised with Mr. Porteran, which is, did she have an obligation to allow him to amend the complaint or was it futile given what their claims were about or under any circumstances? It sounds to me like you're arguing futility. I just want to clarify that that's what you think the basis. That's correct, Your Honor. I think based on what their theory is, there's no way to fix it. Their legal theory is flawed just as a basic premise. There's no universe under which they can somehow allege that a phony appraisal somehow is the but-for cause of them being placed into their loan. And I would also just note that they themselves, I believe, failed to provide. I know that Mr. Porteran, just in arguments here, said there were some new facts that they would allege. But the fact of the matter is they haven't proposed any. They didn't identify any of the new facts that they would use to cure their pleading. And so under CARICO, the CARICO decision, their failure to propose any amendment is a demonstration of their inability to do so. And so Judge Saltzman was correct in not giving them an opportunity to amend because there is simply no way to link that second appraisal to their being placed into the loan. Looks like unless the panel has questions, I will rest so that Mr. Shaughnessy may use the remainder of the time. Any questions from the panel? Further questions? Thank you. Okay. Very good. Mr. Shaughnessy, go ahead, please. Good morning, Your Honors. Again, appearing on behalf of Bank of New York, Mellon, and Baby Loan Servicing. And there's nothing that a panelist said this morning that wasn't already stated in his brief. And I believe the arguments in our answering brief covers the issues that have been raised. In response to the panel's question about leave to amend, I agree with my co-counsel. At every opportunity, plaintiffs have been given an opportunity to show how they could possibly amend their complaint to add new or additional facts to cure what is a fatal defect with the whole theory underlying their case. And they just haven't done so. And given that failure, this court only has to decide whether the pleading itself states a claim. And it simply does not. And the simplest reason why it doesn't is that it's untimely. And it's clear from the allegations and from the arguments that have been made that the reason why it's untimely is because all of the terms of the loan were disclosed in 2006. Nothing in the second appraisal disclosed any new or additional terms. It's simply not material to the loan terms itself. In response to... I'm sorry. I want to clarify. You filed a motion to dismiss under 1286. They have the opportunity to oppose that. And they didn't at that time say there's more facts that we have or here's some additional facts or here's an amended complaint or here's a declaration or here's other evidence, you know, that we would have relied upon. So that you deny this motion at this point and allow us to proceed with an amended complaint or we've demonstrated something you can't do on documentation. Yes, and there was some... Your question was breaking up a bit. But from the gist I was getting was there's been no showing of facts even in the underlying motion, no declaration. And I agree. I believe that's what the record reflects is that at no time has there been an offer of additional facts. And I think it's clear from what's been pled and what's been argued. This is an attempt to avoid the application of the statute of limitations. And the problem that they've run into is the problem we addressed readily in our brief. Under the NIMARC and the PERLIS cases, it's not a lender's responsibility to appraise a borrower's property for the borrower's benefit. And nor does a lender have an obligation to determine for the borrower whether the loan is affordable. And that's what's barring this case from moving forward under another fee. Beyond that, I would take it you would say that when a lender does authorize an appraisal, it's not obligated to provide copies of every appraisal to the borrower? The reason why those appraisals are being made is for the lender to decide whether or not they will qualify for the loan, qualification for a loan. So there's no disclosure obligation to the borrower? I don't want to misrepresent that, so I can't say for certain whether there is. But with respect to that issue, even if there had been an obligation to disclose the second appraisal, again, the plausibility issue that was raised by Judge Saltman is correct. This was a second appraisal that valued the property, I think it was almost $400,000 or $500,000 more than the first. There's no reasonable explanation as to why that would have prevented the borrowers from accepting the loan under the terms that were all disclosed to them. So I think, you know, unless the panel has questions, I think that is the beginning and the end of the analysis for the court. I don't think it needs to go further than the statute of limitations, but if it does, it can rely on Nymark and Perlis to uphold the decision that there simply is no basis for proceeding further with this case. Any further questions from the panel for Mr. Shaughnessy? Okay, very good. Let's go to Mr. Borderud. You have, I believe, about four minutes and one second to be exact. I think your microphone is muted, so could you please unmute your phone? There we go. There, good, thank you. Okay, well, yeah, I'm not sure what to say except that, I mean, I've stated our position on the papers, I think, adequately. I definitely disagree with the court's conclusions. I think the court was impermissibly deciding issues of fact and drawing inferences that really are questions of fact reserved for a jury. I think there are plausible inferences that can be drawn from the second appraisal and the first appraisal based on all the allegations and the complaint and the pattern and practice of these particular defendants and what they did across the country. And I think to ignore this particular fraud, and I think it's clear that the court substituted the terms of the loan and those particular facts for the discovery of the fraud. I think the discovery rule is very clear that it's when they discover the fraud that begins the running of the statute of limitations, when they discovered or should have reasonably discovered. Can I ask a question about the loan terms? Sure. I'm not sure I understand. Is it part of your allegations that given the higher appraisal in particular, if they knew that there was a basis theoretically to value the property higher and putting aside whether that's fraudulent by itself or not, does that mean that this loan really should have been made on more favorable terms and your clients kind of didn't get the benefit of the loan they should have gotten? This should have been a lower interest rate? Well, we've alleged that for sure. That's in the complaint. Okay. The interest rate was a very high interest rate. There's no doubt about that. I realize you'd have to prove this. Are you alleging that it was unconscionably high or out of whack with the current market? That would require an expert. We're not that far yet. I'm just trying to get into discovery and get over the fleeting hump here, which I think we've done with far more than enough detail. I think we're stuck here because of this notion that because they got a loan that they apparently wanted and they paid for it for ten years that everything should be fine and dandy, notwithstanding, you know, a blatant fraud that's been pled and alleged and all of the other facts and circumstances that support the fact that loans all over the country originated by these defendants were fraudulent. You know, it led to the crash of 2008. And, you know, there's not too much question about any of that. So I think it's incorrect to substitute the facts of the loan for when they discovered the fraud. I think that's an error. I don't think you can do that. I think you have to look at when they discovered the fraud. They got a copy of the fraudulent appraisal. And I think the reasonable inferences you can draw from that are, why would they have gotten a second appraisal, not shown it to them, put it in the file? I mean, to me, it's obvious that the only way these people would qualify for the loan they were given is because they needed this phony appraisal in there. I mean, that to me is the reasonable inference from those particular facts that have been alleged. And I think any other inference is unreasonable. And it doesn't favor the plaintiffs. It favors the defendants. And I just think that's wrong. I think when you have a fraud like this, there's all sorts of ways they could be harmed. Obviously, those specifics would have to be proven. I'm going to break in because you've exhausted your 15 minutes. I think we understand. I rest, yeah. Okay, thank you. I think we understand everybody's position very thoroughly, good arguments all around. So thank you very much. Thank you.
judges: Faris, Lafferty, Gan